IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WIM TRANSPORTATION, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2198 |
| | § | |
| ELITE COIL TUBING SOLUTIONS, | § | |
| LLC and JAMES P. HARDY, JR., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff WIM Transportation, Ltd. ("WIM") brought this action against defendants Elite Coil Tubing Solutions, LLC ("Elite") and James P. Hardy, Jr. (collectively, "Defendants") in the 55th Judicial District Court of Harris County, Texas, where it was filed under Cause No. 2013-39458. Defendants removed the action to this court. Pending before the court is Defendant's Partial Motion to Dismiss Pursuant to Rule 12[b][6] ("Partial Motion to Dismiss") (Docket Entry No. 13). For the reasons explained below, Defendants' Partial Motion to Dismiss will be denied.

**I. Background**

This case involves an alleged failure by Elite to pay WIM for certain services involving the use of nitrogen to clean coiled tubing used in the oil and gas industry. According to WIM's Original Petition, Elite "is in the business of providing coil

tubing material and services in connection with oil and gas exploration activities. . . . The tubing is inserted into the ground for use, and then removed and recoiled upon completion."[1] However, Elite "lacks the equipment, personnel and experience to remove and/or extract fluids and other unwanted material from tubing when the tubing is taken out of the ground for re-coiling and relocation."[2] So Elite has engaged WIM "to force nitrogen th[r]ough [the] tubing to remove the unwanted materials as a necessary step to re-coiling the tubing."[3] Under this arrangement, "WIM is summoned to the well site and supplies all of the necessary nitrogen (which is expended) and services to enable removal and relocation of Defendant Elite's coil[ed] tubing."[4] WIM alleges that Elite has failed to pay for approximately $37,015 of its services in connection with the cleaning of Elite's coiled tubing.[5]

WIM filed its Original Petition in the 55th Judicial District Court of Harris County, Texas, on July 3, 2013, arguing that it is entitled to recover against Elite under the Texas Trust Fund Act, on sworn account, and in quantum meruit.[6] Defendants removed the

---

[1] Plaintiff's Original Petition, Exhibit F to Notice of Removal, Docket Entry No. 1-9, p. 2.

[2] Id.

[3] Id.

[4] Id. at 2-3.

[5] Id. at 5.

[6] Plaintiff's Original Petition, Exhibit F to Notice of Removal, Docket Entry No. 1-9.

case to this court on July 26, 2013, on the basis of diversity jurisdiction.[7]

Defendants filed their Partial Motion to Dismiss on August 23, 2013, seeking dismissal of WIM's claims under the Texas Trust Fund Act.[8] WIM filed a response on October 7, 2013.[9] Defendants filed their reply the same day.[10]

## II. **Applicable Law**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

---

[7]Notice of Removal, Docket Entry No. 1.

[8]Partial Motion to Dismiss, Docket Entry No. 13.

[9]Plaintiff's Response to Defendants' Partial Rule 12(b)(6) Motion to Dismiss ("Response"), Docket Entry No. 16.

[10]Defendants' Reply Memo in Support of Partial Motion to Dismiss Pursuant to Rule 12[b][6] ("Reply"), Docket Entry No. 17.

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 127 S. Ct. at 1966) (internal quotation marks omitted). "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009).

### III. Analysis

Defendants argue that WIM has failed to state a claim under the Texas Trust Fund Act because "[t]here is no construction or improvement to real property at issue."[11] The Texas Trust Fund Act

---

[11]Partial Motion to Dismiss, Docket Entry No. 13, p. 2; see also Defendant's Memo in Support of Partial Motion to Dismiss (continued...)

is codified in Chapter 162 of the Texas Property Code. Kelly v. General Interior Const., Inc., 301 S.W.3d 653, 656 (Tex. 2010); Dealers Elec. Supply Co. v. Scroggins Const. Co., Inc., 292 S.W.3d 650, 652 (Tex. 2009). Under § 162.001(a) of the Texas Property Code "[c]onstruction payments are trust funds . . . if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state." Under § 162.003(a) "[a]n artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement."

Defendants appear to advance two arguments why WIM's claims do not involve construction or improvements to real property: (1) Elite's coil tubing is not an improvement to real property and (2) Elite's activities do not constitute construction under § 162.001(a).[12] With regard to the first argument, Defendants

---

[11](...continued)
Pursuant to Rule 12[b][6] ("Memo in Support of Partial Motion to Dismiss"), attached to Partial Motion to Dismiss, Docket Entry No. 13-1, p. 6 ("There is no construction at issue in this litigation. There are no construction payments. There is no construction, improvement or other structure at issue as required under the [Texas Trust Fund Act].").

[12]See Memo in Support of Partial Motion to Dismiss, attached to Partial Motion to Dismiss, Docket Entry No. 13-1, pp. 6-10.

contend that "[t]here is no construction at all or repair of anything connected to, in any degree, the real property."[13] Distinguishing the coiled tubing from a drilling rig, which Defendants acknowledge "might be an improvement," Defendants argue that here "there is no work or materials supplied to a rig. The alleged service involves blowing nitrogen into a movable and coiled string of tubing which sits on a spool on a 18-wheeler/coil tubing unit."[14] In support of their second argument, Defendants cite Holley v. NL Indus./NL Acme Tool Co., 718 S.W.2d 813, 815 (Tex. App.—Austin 1986, writ ref'd n.r.e.), and Endeavor Energy Res., L.P. v. Heritage Consol., LLC, No. 3:12-CV-03765-B, 2013 WL 4045250, at *9 (N.D. Tex. Aug. 9, 2013), for the proposition that "drilling is not 'construction' under § 162.001[a]."[15]

WIM argues in its Response that "[t]here is no decision from the Texas Supreme Court upon the issue raised by Defendants: whether the Texas Trust Fund Act can be applied to oil and gas wells" and that "[a] division of authority exists among lower Texas courts."[16] WIM argues that "an oil and gas well is an improvement to real property,"[17] and cites Painter v. Momentum Energy Corp., 271

---

[13] Id. at 6.

[14] Id.; see also id. at 9.

[15] Id. at 10.

[16] Response, Docket Entry No. 16, p. 2; see also Plaintiff's Brief in Opposition to Rule 12(b)(6) Motion to Dismiss ("Brief in Opposition"), attached to Response, Docket Entry No. 16-1.

[17] Brief in Opposition, attached to Response, Docket Entry No. 16-1, p. 5.

S.W.3d 388 (Tex. App.—El Paso 2008, pet. denied), and Moreno v. BP Am. Prod. Co., No. 04-08-00036-CV, 2008 WL 4172248, at *2 (Tex. App.—San Antonio Sept. 10, 2008, pet. denied) (mem. op.), for the proposition that "there are Texas intermediate courts that support the assertion that the drilling process of an oil and gas well constitutes construction of an improvement to real property."[18]

WIM acknowledges that neither of these cases interpreted Chapter 162 of the Texas Property Code.[19] Instead, in each case the courts interpreted similar language in § 95.002 of the Texas Civil Practice and Remedies Code and held that oil and gas drilling activity constitutes construction of an improvement to real property. See Painter, 271 S.W.3d at 399; Moreno, 2008 WL 4172248, at *2. Section 95.002 states that it applies only to a claim "that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." Because both § 95.002 of the Texas Civil Practice and Remedies Code and § 162.003 of the Texas Property Code deal with construction or repair of an improvement to real property, WIM argues that these cases are persuasive evidence of how the Texas Supreme Court might rule on the issue of whether oil and gas drilling activity constitutes

---

[18] Id. at 6.

[19] Id. at 6, 9-10.

construction of an improvement to real property for purposes of Chapter 162 of the Texas Property Code.[20]

In their Reply, Defendants argue that Painter is distinguishable on its facts because it involved a "rig, which sat upon the ground" and that the court "found that setting casing is part of construction of a rig."[21] Defendants argue that "Elite's 18 wheeler tractor and trailer are not fixtures and certainly lack any permanence or annexation to land."[22]

### A. There is a split of authority on the issue of whether the Texas Trust Fund Act applies to oil and gas drilling activity.

The court has found only two Texas cases interpreting the Texas Trust Fund Act in the context of an oil and gas drilling contract. In Triton Oil & Gas Corp. v. E. W. Moran Drilling Co., 509 S.W.2d 678 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.), the plaintiff drilling contractor hired third-party subcontractors in order to complete its obligations under a drilling contract after it "encountered heaving shale, or other similar formation" and "the drill pipe became stuck." Id. at 681, 685-87. The court held that former Tex. Rev. Civ. Stat. Ann. art 5472e, § 1, which was repealed and recodified as Tex. Prop. Code §§ 162.001 to 162.003, "created and imposed upon" the drilling contractor a

---

[20] Id. at 9-10.

[21] Reply, Docket Entry No. 17, p. 3.

[22] Id.

"statutory trust" in favor of the subcontractors for any payments the contractor received from the owner of the well. Id. at 687.

In Holley the court interpreted the codified version of the same statute and held "as a matter of law that drilling an oil and gas well is not the construction of an improvement on real property within the meaning of Chapter 162 of the Property Code." Holley, 718 S.W.2d at 815. Concluding that "construction" was not defined in the Property Code and unable to locate any "Texas authority addressing the exact issue of whether drilling an oil or gas well is construction of an improvement to real property," the court looked to "common usage, the common law and former statutory provisions in attempting to discover the meaning of 'construction contract for the improvement of specific real property.'" Id. at 814 (quoting Tex. Prop. Code § 162.001). The definition of "construction" that the court adopted involved the "assembly of various materials into a permanent structure." Id. at 815.

In examining the former Tex. Rev. Civ. Stat. Ann. art. 5472e, the court determined that the language of art. 5472e "supports an interpretation of 'construction' which excludes the drilling of oil and gas wells.'" Id. The court noted that "art. 5472e created a trust for the benefit of contractors and subcontractors 'who may labor or furnish labor or material for the <u>construction or repair of any house, building, or improvement whatever</u> upon such real property.'" Id. (quoting Tex. Rev. Civ. Stat. Ann. art 5472e, § 1). The court further noted that "[a]lthough this language was

-9-

omitted from the Property Code, the Code was intended to be 'a topic-by-topic revision of the state's general and permanent statute law <u>without substantive change</u>.'" <u>Id.</u> (quoting Tex. Prop. Code Ann. § 1.001(a)). The court ultimately concluded that "[t]he drilling of an oil well does not involve construction, in the sense of assembling materials to make a permanent whole." <u>Id.</u> at 815.

In <u>Triton</u> a Texas court of appeals found the Texas Trust Fund Act applicable to create a statutory trust in favor of drilling subcontractors in the context of an oil and gas drilling contract. <u>Triton</u>, 509 S.W.2d at 687. In <u>Holley</u> a Texas court of appeals held that "drilling an oil and gas well is not the construction of an improvement on real property within the meaning of Chapter 162 of the Property Code." <u>Holley</u>, 718 S.W.2d at 815. There is thus a split of authority on the issue of whether a drilling contract constitutes a "construction contract for the improvement of specific real property" under the Texas Trust Fund Act. Tex. Prop. Code § 162.001(a).

**B. Texas courts have interpreted similar language in the Civil Practice and Remedies Code to find that oil and gas drilling activity constitutes construction or repair of an improvement to real property.**

WIM argues that because both § 95.002 of the Texas Civil Practice and Remedies Code and § 162.003 of the Texas Property Code are concerned with construction or repair of an improvement to real property, cases interpreting § 95.002 in the context of oil and gas drilling activity are persuasive evidence of how the Texas Supreme

Court might rule on the issue of whether oil and gas drilling activity constitutes construction of an improvement to real property for purposes of Chapter 162 of the Texas Property Code. Indeed, at least two Texas courts of appeals have analyzed the opinion in Holley in interpreting § 95.002. See Painter, 271 S.W.3d at 398-99; Francis v. Coastal Oil & Gas Corp., 130 S.W.3d 76, 85 (Tex. App.—Houston [1st Dist.] 2003, no pet.). The court finds Francis, Credeur,[23] Moreno, and Painter to be particularly relevant.

In Francis the court held that a "coiled-tubing washout" of a well constitutes "repair or renovation" of an improvement to real property. Francis, 130 S.W.3d at 85. The plaintiff in Francis was injured while working "on a coiled-tubing washing of the M. Salinas No. 6 well." Id. at 80. "In this process, an engine pumped debris out of the well and into a receptacle, in this case, an open top tank. The debris included gas, water, and sand." Id. at 81. The court held that "the coiled-tubing washout [Plaintiff] was performing qualified as either repair or renovation of the well." Id. at 85.

The Francis court acknowledged the holding in Holley "that 'drilling an oil and gas well is not the construction of an improvement on real property' for purposes of chapter 162 of the Property Code." Id. (quoting Holley, 718 S.W.2d at 85). In

---

[23]Credeur v. MJ Oil Inc., 123 F. App'x 585 (5th Cir. 2004).

reconciling its holding with the reasoning of Holley, the court determined that "Holley focuses solely on whether 'construction,' specifically the activity of drilling, constitutes an improvement under the construction-payment provisions of the Property Code" and drew a distinction between the act of drilling and the well itself. See id. ("In deciding that 'construction' does not constitute an improvement, however, Holley reasons that drilling does not 'involve the assembly of various materials into a permanent structure,' in contrast to the well that remains after the drilling." (quoting Holley, 718 S.W.2d at 815)). Drawing this distinction, the court concluded that "Holley thus conforms with settled law recognizing that mineral wells constitute improvements to real property." Id.; see also Wagner & Brown, Ltd. v. Sheppard, 282 S.W.3d 419, 426 (Tex. 2008) ("[O]il and gas wells are improvements to real property.").

In Credeur the owner of an oil and gas well contracted with Nabors Drilling, U.S.A., Inc. ("Nabors") to drill a well, and with Newpark Drilling Fluids ("Newpark") "to perform certain services on the well, including mud filtration." Credeur, 123 F. App'x at 587. An employee of Newpark who was "responsible for operating and maintaining the Newpark equipment on the well" was injured when he "partially fell through a grating hatch accessing Nabors' mud tank." Id. The employee argued that Chapter 95 of the Texas Civil Practice and Remedies Code did not apply because his "work on the rig for Newpark was not construction, repair, renovation, or

modification." Id. at 588. The district court noted that the employee, "like the plaintiff in Francis, . . . assisted in the active drilling of [the] well by filtering the mud so that it could be injected back into the well to facilitate further drilling" and concluded that "[a]rguably, this work qualifies as an ongoing repair, renovation or modification of" the well. Credeur v. MJ Oil Inc., No. H-01-1377, slip op. at 8 (S.D. Tex. Apr. 13, 2004). The Fifth Circuit affirmed, concluding that "[f]or purposes of § 95.003, Texas courts have found that activity facilitating a well's performance is construction, renovation, or modification." Credeur, 123 F. App'x at 588 (citing Francis, 130 S.W.3d at 85).

In Moreno a company contracted "to drill and set conductor pipe for a well site." Moreno, 2008 WL 4172248, at *1. The conductor pipe, was transported to the well site on a flatbed truck in forty-foot sections, each weighing approximately 1,700 pounds. Id. Instead of waiting for a crane, employees used a bobcat to unload and move the pipe. Id. One of the employees was injured when a section of conductor pipe rolled over him. Id. The employee argued that Chapter 95 of the Civil Practice and Remedies Code did not apply "because the conductor pipe that rolled over [him] was not an improvement to real property." Id. The court noted that "Texas courts of appeal, however, have unanimously construed Chapter 95 broadly and held that the injury does not have to directly result from the object on which a plaintiff is working in order for Chapter 95 to apply." Id. (citing Williamson v.

Paccar, Inc., No. 4:06cv282, 2007 WL 2264720, at *3 (E.D. Tex. Aug. 6, 2007)). In holding that Chapter 95 applied, the court noted that it was "undisputed that [the company] was engaged in the construction, repair, renovation, or modification of an improvement to real property, i.e., an oil and gas well." Id.

The court in Painter held that drilling operations constitute construction of an improvement to real property for purposes of § 95.002. Painter, 271 S.W.3d at 399. In Painter one plaintiff was injured and the other killed when the rotating head on a blowout preventer "fell from the top of the preventer." Id. at 393. When the accident occurred, "the well had reached total depth and . . . employees were in the process of rigging down the drilling rig." Id. The court analyzed Holley, Francis, and Credeur and concluded that "in the context of section 95.002, [Plaintiffs] were involved in the construction of an improvement to real property." Id. at 399. The court rejected the argument "distinguish[ing] the act of drilling a well from the construction of a well structure, once drilling is complete," stating that "[i]t is axiomatic that the drilling and the installation of casing is an integral part of the construction of a well and that, without drilling, there can be no well." Id. Accordingly, the court concluded that "[d]rilling and the completion of drilling operations are more properly characterized as an essential part of the construction of a well, as opposed to some preliminary, unrelated task." Id.

It is apparent from these cases that in the § 95.002 context Texas courts have interpreted oil and gas drilling activities and the maintenance of oil and gas wells to constitute construction or repair of improvements to real property. Nevertheless, it is unclear in light of <u>Francis</u> and <u>Painter</u> whether the courts' interpretations of those terms in the § 95.002 context are applicable to Chapter 162 of the Texas Property Code.

### C. The facts as currently pleaded do not lend themselves to resolution of this disputed issue of law.

As noted above, <u>Triton</u> and <u>Holley</u> represent a split of authority on the issue of whether a drilling contract constitutes a "construction contract for the improvement of specific real property" under the Texas Trust Fund Act. Tex. Prop. Code § 162.001(a). It is clear, however, that Texas courts have been willing to interpret the term "construction" to encompass the drilling and maintenance of oil and gas wells. See <u>Painter</u>, 271 S.W.3d at 399; <u>Moreno</u>, 2008 WL 4172248, at *1; <u>see also</u> <u>Credeur</u>, 123 F. App'x at 588. Furthermore, it is settled law that an oil and gas well is an improvement to real property under Texas law. <u>Wagner & Brown, Ltd.</u>, 282 S.W.3d at 426. However, it is unclear how the courts' interpretation of "construction" in the Chapter 95 context would apply to Chapter 162 of the Texas Property Code.

The court need not attempt to resolve the questions, however, because the facts are not sufficiently developed to allow the court to apply the law in any meaningful sense. WIM's Original Petition

-15-

alleges that Elite "is in the business of providing coil tubing material and services in connection with oil and gas exploration activities."[24] The nature of those activities could bear on the applicability of the Texas Trust Fund Act. More importantly, neither party has produced any contract contended to be the "construction contract" under § 162.001(a). Plaintiff argues that resolution of this issue should occur "after development of the facts."[25] The court agrees. Accordingly, Defendants' Partial Motion to Dismiss will be denied.

## IV. Order

For the reasons explained above, Defendant's Partial Motion to Dismiss Pursuant to Rule 12[b][6] (Docket Entry No. 13) is **DENIED**.

**SIGNED** at Houston, Texas, on this 24th day of February, 2014.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[24]Plaintiff's Original Petition, Exhibit F to Notice of Removal, Docket Entry No. 1-9, p. 2.

[25]Response, Docket Entry No. 16, p. 2 ¶ 2.